United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit



No. 95-1571

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant,

v.

DONALD E. GREEN, LAW OFFICES,

Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge] 



Before

Torruella, Chief Judge, 
Bownes, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



John F. Suhre, Attorney, with whom C. Gregory Stewart, General 
Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent 
J. Blackwood, Assistant General Counsel, were on brief for appellant. 
Nancy S. Shilepsky, with whom David J. Burgess and Dwyer & 
Collora, were on brief for appellee. 



February 9, 1996

STAHL, Circuit Judge. On December 29, 1993, Ollie STAHL, Circuit Judge. 

Osinubi, a female paralegal at the Law Offices of Donald E.

Green ("Green"), filed a Title VII charge against Green

alleging sexual harassment and constructive discharge.

Osinubi filed her charge with the Equal Employment

Opportunity Commission ("EEOC") 191 days after the last

alleged act of discrimination. After investigating Osinubi's

charge, the EEOC brought this action against Green in the

United States District Court for the District of

Massachusetts alleging sexual and racial harassment in

violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. 2000e et seq. Green moved to dismiss the complaint 

under Fed. R. Civ. P. 12(b)(6), arguing that Osinubi's claim

was untimely, having been filed outside the 180-day

limitations period outlined in section 706(e)(1) of Title

VII, 42 U.S.C. 2000e-5(e)(1). The district court agreed,

and because Green's Motion to Dismiss presented matters

outside the pleadings, the court treated it as a motion for

summary judgment and granted summary judgment for Green. The

EEOC appeals. For the reasons discussed below, we reverse. 

I. 

BACKGROUND 

A. Title VII 

Under section 706(e)(1), a charge of employment

discrimination generally must be filed with the EEOC within

180 days of the last alleged act of discrimination. 42

-3- 3

U.S.C. 2000e-5(e)(1).1 However, if a claimant initially

institutes proceedings with a state or local agency, a charge

can be filed with the EEOC up to 300 days after the

discriminatory act. Id. 

Section 706(c) provides that where an alleged

discriminatory employment practice has occurred in a so-

called "deferral state" (a state that has its own anti-

discrimination laws and enforcement agency), the deferral

state has sixty days of exclusive jurisdiction over the

claim, and only after the sixty days have expired or the

proceedings have been "earlier terminated" can the charge be

filed with the EEOC. 42 U.S.C. 2000e-5(c).2 The sixty-

 

1. In relevant part, section 706(e)(1) reads:

A charge under this section shall be
filed [with the EEOC] within one hundred
and eighty days after the alleged
unlawful employment practice occurred . .
. , except that in a case of an unlawful
employment practice with respect to which
the person aggrieved has initially
instituted proceedings with a State or
local agency with authority to grant or
seek relief from such practice or to
institute criminal proceedings with
respect thereto upon receiving notice
thereof, such charge shall be filed by or
on behalf of the person aggrieved within
three hundred days after the alleged
employment practice occurred . . . .

42 U.S.C. 2000e-5(e)(1). 

2. In relevant part, section 706(c) reads:

In the case of an alleged unlawful
employment practice occurring in a State,

-4- 4

day period of exclusive jurisdiction is intended to "give

States and localities an opportunity to combat discrimination

free from premature federal intervention." EEOC v. 

Commercial Office Prods. Co., 486 U.S. 107, 110 (1988). Many 

state agencies, in order to facilitate the federal processing

of charges, have entered into "worksharing agreements" with

the EEOC in which the state agency agrees to waive its right

to the sixty-day period of exclusive jurisdiction for certain

categories of claims.

Massachusetts is a deferral state and the

Massachusetts Commission Against Discrimination ("MCAD") is

the agency responsible for enforcing Massachusetts's anti-

discrimination laws. The EEOC and the MCAD have entered into

a Worksharing Agreement to avoid duplication of effort by

apportioning the responsibilities for processing charges. 

 

. . . which has a State or local law
prohibiting the unlawful employment
practice alleged and establishing or
authorizing a State or local authority to
grant or seek relief from such practice .
. . no charge may be filed under [this
section] by the person aggrieved before
the expiration of sixty days after
proceedings have been commenced under
State or local law, unless such
proceedings have been earlier terminated
. . . . 

42 U.S.C. 2000e-5(c).

-5- 5

B. Facts 

In reviewing a motion for summary judgment, we

recite the facts in the light most favorable to the non-

moving party. See Mesnick v. General Elec. Co., 950 F.2d 

816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). 

Green hired Osinubi as a paralegal in October of

1992. Osinubi later left Green's employment allegedly

because a work environment fraught with sexual harassment

made work intolerable. On December 29, 1993, Osinubi filed a

charge of sexual harassment and constructive discharge with

the EEOC. Osinubi did not file a separate charge with the

MCAD.

At the top of her EEOC charge form, in the space

provided for naming the state or local agency, if any,

Osinubi typed "Mass Comm Against Discrimination." Osinubi

failed, however, to mark a box in the lower left-hand corner

that stated, "I want this charge filed with both the EEOC and

the State or local Agency, if any." Osinubi also indicated

on the charge form that the latest date that discrimination

took place was June 20, 1993, 191 days prior to her filing

the charge. After investigating the charge, the EEOC

commenced this sexual harassment and race discrimination

action in federal district court on December 7, 1994.

On February 8, 1995, Green moved to dismiss the

complaint under Fed. R. Civ. P. 12(b)(6), contending that the

-6- 6

EEOC's claim was time-barred because of Osinubi's failure to

file her charge within 180 days of the last alleged act of

discrimination. Green further maintained that the EEOC could

not avail itself of the extended 300-day limitations period

because the extension only applies to claimants who have

first filed with the state agency and Osinubi's charge was

never filed with the MCAD. To support this factual

proposition, Green attached to its motion the affidavit of

Jane Brayton, executive assistant to the MCAD Commissioners,

stating that her review of the MCAD computer files revealed

no record of Osinubi's charge having been filed with the

MCAD.

On March 6, 1995, the EEOC filed its Opposition to

the Motion to Dismiss and attached the affidavit of Elizabeth

Grossman, an EEOC trial attorney.3 In her affidavit,

Grossman stated, inter alia, that the EEOC had forwarded a 

copy of Osinubi's charge to the MCAD on December 29, 1993. 

Grossman supported this statement with a copy of the EEOC's

charge transmittal form for Osinubi's charge, dated 12/29/93

and addressed to the MCAD. The form, however, was not signed

by an officer of the MCAD indicating the MCAD's receipt. 

 

3. Grossman attached to her affidavit the following six
exhibits: a copy of Osinubi's charge, her notes of a phone
conversation with Green's attorney, the EEOC's charge
transmittal form addressed to the MCAD for Osinubi's charge,
the EEOC-MCAD Worksharing Agreement, letters from Green's
attorney to the EEOC investigator, and the EEOC's letter of
determination. 

-7- 7

On March 13, 1995, Green moved to strike the charge

transmittal form and that portion of Grossman's Affidavit

regarding the EEOC's forwarding of Osinubi's charge. Green

contended that the charge transmittal form was

unauthenticated, did not prove filing with and receipt by the

MCAD, and that Grossman has no personal knowledge of the

EEOC's forwarding of Osinubi's charge to the MCAD.

On March 23, 1995, the EEOC filed its Opposition to

the Motion to Strike. The EEOC responded that Grossman could

attest to routine EEOC procedures and thereby authenticate

the charge transmittal form and that Osinubi's charge was

constructively filed with the MCAD when the EEOC forwarded it

to the MCAD on December 29, 1993. In the alternative, the

EEOC argued that even if the MCAD's receipt of Osinubi's

charge was required to initiate MCAD proceedings, it could

verify such receipt with the attached affidavit of Walter W.

Horan, the EEOC Program Coordinator for the MCAD. In his

attached affidavit, Horan stated that he was the MCAD's

custodian of records of EEOC charges forwarded to the MCAD

and that MCAD records indicated that the MCAD received a copy

of Osinubi's charge on January 6, 1994. Horan attached to

his affidavit a signed copy of the charge transmittal form

acknowledging the MCAD's receipt of Osinubi's charge. 

-8- 8

C. District Court Opinion 

On March 29, 1995, the district court issued its

opinion resolving the Motion to Dismiss and the Motion to

Strike. The court began its opinion by noting that because

matters outside the pleadings were presented, it was

converting Green's motion to dismiss for failure to state a

claim to a motion for summary judgment. The district court

had not previously notified the parties of its intention to

convert. The court then explained that to qualify for the

extended limitations period, Osinubi or the EEOC on Osinubi's

behalf must have initially filed charges with the MCAD. The

court found, however, that neither Osinubi nor the EEOC had

done so. With respect to Osinubi, the court viewed her

failure to check the box on the EEOC charge form as evincing

a preference not to have her charge filed with the MCAD.

The EEOC, the court found, had also failed to file

Osinubi's charge with the MCAD. The court assumed arguendo 

that Grossman's contested attestation that the EEOC had

forwarded Osinubi's charge to the MCAD was admissible. The

court held, however, that merely forwarding the charge to the

MCAD was not sufficient to initiate MCAD proceedings and

thereby trigger the extended limitations period; proof that

the MCAD actually received the forwarded charge also was

necessary. 

-9- 9

Despite Horan's verification of the MCAD's receipt

of Osinubi's charge, the district court found that the EEOC

had not contested Brayton's assertion that the MCAD had no

record of receiving Osinubi's charge. Accepting this

"uncontested" fact as true, the court reasoned as follows: 

because the MCAD never received a copy of Osinubi's charge, a

precondition to invoking the 300-day extended limitations

period had not been satisfied; thus, the general 180-day

limitations period applied, and the EEOC's complaint was

time-barred. The district court made no mention of the Horan

Affidavit and did not explain the reason for its failure to

consider it. 

Finally, the district court dismissed the EEOC's

argument that paragraph II.A. of the EEOC-MCAD Worksharing

Agreement ("[the MCAD] designates [the EEOC] as its agent for

the purpose of receiving charges") allows MCAD proceedings to

be initiated upon the EEOC's receipt of a charge and without 

additional notice to the MCAD. Citing Hamel v. Prudential 

Ins. Co., 640 F. Supp. 103, 107 (D. Mass. 1986), the court 

held that filing with the state agency is a precondition to

invoking the extended limitations period and that to allow

otherwise, e.g., by way of worksharing agreement, would be

inconsistent with the scheme Congress established.

-10- 10

II. 

DISCUSSION 

On appeal, the EEOC argues that the district court

erred in granting summary judgment because: (1) in paragraph

II.A. of the EEOC-MCAD Worksharing Agreement, the MCAD

designated the EEOC as its agent for receiving charges and

therefore MCAD proceedings were initiated when the EEOC

received Osinubi's charge, thereby qualifying Osinubi for the

extended limitations period and (2) even if actual receipt by

the MCAD was required to commence MCAD proceedings, the Horan

Affidavit provided ample evidence that the MCAD received

Osinubi's charge to contradict the Brayton Affidavit and

create a genuine issue of material fact. 

Because we find the EEOC's second argument

dispositive, we do not consider its first claim except to

offer the following observation from our examination of the

EEOC-MCAD Worksharing Agreement. While Title VII4 and the

 

4. Title VII encourages cooperation between the EEOC and
state and local agencies and authorizes the formalization of
such cooperative efforts in written agreements. Section
705(g)(1) empowers the EEOC "to cooperate with and, with
their consent, utilize regional, State, local, and other
agencies." 42 U.S.C. 2000e-4(g)(1). Section 709(b)
provides that "[i]n furtherance of such cooperative efforts,
the Commission may enter into written agreements with such
State or local agencies." 42 U.S.C. 2000e-8(b). The
Supreme Court has interpreted these sections to "envision the
establishment of some sort of worksharing agreements between
the EEOC and state and local agencies" and to permit
provisions within these worksharing agreements "designed to
avoid unnecessary duplication of effort or waste of time."
EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 122 

-11- 11

case law of other circuits5 support the conclusion that

worksharing agreements can permit state proceedings to be

automatically initiated when the EEOC receives the charge, it

is unclear from the language of the EEOC-MCAD Worksharing

Agreement whether the EEOC and the MCAD intended MCAD

proceedings to be initiated upon the EEOC's receipt.6

 

(1988).

5. See Griffin v. City of Dallas, 26 F.3d 610, 612-13 (5th 
Cir. 1994) (holding that, under the terms of a worksharing
agreement between the EEOC and the Texas Commission on Human
Rights ("TCHR"), the EEOC's acceptance of a charge as the
TCHR's agent instituted state proceedings within the meaning
of section 706(e)(1)); Hong v. Children's Memorial Hosp., 936 
F.2d 967, 970-71 (7th Cir. 1991) (holding that "workshare
agreement can alone effect both initiation and termination of
state proceedings and that, as a result, plaintiffs may file
with the EEOC without first filing with the [state agency]");
Sofferin v. American Airlines, Inc., 923 F.2d 552, 559 (7th 
Cir. 1991) (holding that "a worksharing agreement could
provide that a filing with the EEOC simultaneously initiates
and terminates state proceedings"); Petrelle v. Weirton Steel 
Corp., 953 F.2d 148, 152 (4th Cir. 1991) (conceding without 
deciding that plaintiff "may be correct in arguing that a
work sharing agreement can be crafted to authorize automatic
implementation of the requirements of [the ADEA equivalent to
section 706(e)(1)]").

6. The EEOC and the MCAD would be wise to revise the
language of their Worksharing Agreement to clarify their
intent. Rather than explicitly providing that the EEOC's
receipt of charges on the MCAD's behalf initiates MCAD
proceedings for purposes of section 706(e)(1), paragraph
II.A. states that the EEOC will be the MCAD's "agent for
purposes of receipt." That phrase, however, supports two
readings: that the EEOC will act as the MCAD's mailbox, date
stamping and accepting mail on the MCAD's behalf or that the
EEOC's receipt of a charge also initiates MCAD proceedings.
The EEOC and the MCAD should also address the apparent
ambiguity arising from the Worksharing Agreement's failure to
define terms such as "appropriate charges" in paragraph II.D.
and to distinguish the "advance waivers" of paragraph
III.E.11. from the other waivers of paragraph III.E.1-10.

-12- 12

After reciting the standard of review, we turn our

attention to the EEOC's second argument. We review a grant

of summary judgment de novo and are guided by the same 

criteria as the district court; a grant of summary judgment

cannot stand on appeal "unless the record discloses no

trialworthy issue of material fact and the moving party is

entitled to judgment as a matter of law." Alexis v. 

McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 346 (1st 

Cir. 1995).

Whether Osinubi's charge enjoys the extended

limitations period and is thereby timely filed depends on

whether the MCAD received a copy of Osinubi's charge.7 The

parties have put this material fact in dispute by submitting

two competing affidavits: Brayton's assertion that the MCAD

has no record of receiving Osinubi's charge and Horan's

attestation to the MCAD's receipt of Osinubi's charge and

charge transmittal form denoting the same. Accordingly,

because the record before the district court posed a genuine

issue of material fact, summary judgment could have been

granted for Green only if the district court acted within the

sphere of its discretion in failing to consider the Horan

Affidavit. 

 

7. Because the EEOC does not contest the district court's
ruling that forwarding a charge to the MCAD is not sufficient
to initiate MCAD proceedings, we need not decide whether
anything less than the MCAD's receipt, such as the EEOC's
mere forwarding, initiates MCAD proceedings.

-13- 13

Ordinarily, the district court has broad authority

to prescribe the evidentiary materials it will consider in

deciding a motion for summary judgment. See United States v. 

Parcels of Land, 903 F.2d 36, 45-46 (1st Cir. 1990). We are 

reluctant to second-guess the district court in this area and

review such decisions only for a clear abuse of discretion. 

See id. at 45. Nonetheless, we conclude that on the very 

unusual circumstances of this case, the district court

overstepped its authority and abused its discretion in

failing to consider the Horan Affidavit.

The unusual circumstances that motivate this

decision include: (1) the district court's failure to notify

the parties of its intention to convert Green's Motion to

Dismiss into a motion for summary judgment, (2) the EEOC's

attachment of the Horan Affidavit to a filing that was

directly related to the Motion to Dismiss, and (3) the

prejudice to the EEOC from the court's failure to give notice

of its intention to convert. We discuss each in turn.

Fed. R. Civ. P. 12(b) has been interpreted to

require the district court to expressly notify the parties of

its intention to convert. See Chaparro-Febus v. 

International Longshoremen Ass'n, Local 1575, 983 F.2d 325, 

332 (1st Cir. 1992). In an effort to be pragmatic, this

court has excused such a failure when it is harmless. Id. 

(holding the failure harmless "when the opponent has received

-14- 14

the affidavit and materials, has had an opportunity to

respond to them, and has not controverted their accuracy"). 

We decline to excuse the district court in the instant case,

however, as we find that its failure to notify the EEOC and

Green of its decision to convert the Motion to Dismiss to one

for summary judgment prejudiced the EEOC because the district

court failed to consider the Horan Affidavit. 

Although the district court never explained its

failure to consider the Horan Affidavit in its summary

judgment order or referred to the Horan Affidavit in any way,

we presume that once it denied the Motion to Strike, the

court saw no need to consider the EEOC's Opposition to the

Motion to Strike and accordingly overlooked the Horan

Affidavit referred to therein and attached thereto. The

Opposition to the Motion to Strike, however, was directly

related to the Motion to Dismiss; the district court had to

resolve the Motion to Strike in order to determine which

affidavits were properly before it on summary judgment. As

such, the Opposition to the Motion to Strike was a filing to

which a party reasonably might attach evidentiary materials

opposing the Motion to Dismiss.8 Having failed to notify

 

8. In its Opposition to the Motion to Strike, the EEOC
argued that should the court grant the Motion to Strike the
Grossman Affidavit, it should consider the attached Horan
Affidavit in its place. While it would have been preferable
for the EEOC to have attached the Horan Affidavit to a
separate motion requesting the court to consider the
affidavit as newly submitted evidence, the Horan Affidavit is

-15- 15

the parties of its intention to convert, the district court

at a minimum should have considered a filing like the Horan

Affidavit that had reasonably been attached to an opposition

that was directly related to the Motion to Dismiss.9 

Had the district court followed the prescribed

approach of Rule 12(b) and notified the parties of its intent

to convert, the EEOC would almost certainly have had the

opportunity to ensure that the district court consider the

Horan Affidavit. When a court informs the parties of its

intention to convert, ordinarily it provides the parties with

a minimum of ten days, pursuant to Fed. R. Civ. P. 56(c), in

which to augment previous filings. Had the district court so

notified the parties in the instant case, the EEOC could have

resubmitted the Horan Affidavit, attached to an opposition to

the converted motion for summary judgment, and thereby

guaranteed its consideration.10 Similarly, had the

district court specified which submissions it would consider

 

sufficiently related to the Motion to Strike, that its
attachment to the Opposition to the Motion to Strike is
reasonable. 

9. In so holding, we do not require the district court to
scour ancillary filings for hidden and potentially relevant
affidavits. A court need only refer to those filings in
which a party reasonably might include materials in support
of or in opposition to the motion to dismiss.

10. Local Rule 56.1 of the District of Massachusetts
requires a district court to consider evidentiary materials
filed as exhibits to the opposition to the motion for summary
judgment. 

-16- 16

in making its summary judgment decision, the EEOC could have

filed the Horan Affidavit in compliance therewith. 

As it turned out, however, the district court's

failure to notify the parties of its intention to convert

left the parties in the dark. Under this unique set of

circumstances, where the district court's failure to notify

the parties of its intention to convert was prejudicial and

the Horan Affidavit was attached to a filing directly related

to the Motion to Dismiss, the district court's failure to

consider the Horan Affidavit was an abuse of discretion. 

III. 

CONCLUSION 

Because we find that the Horan and Brayton

Affidavits presented the district court with a genuine issue

of material fact, we vacate the district court's order 

granting summary judgment for Green and remand for further 

proceedings consistent with this opinion.

-17- 17