EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

Donald E. GREEN, Law Offices,
Defendant–Appellee.

No. 95–1571.

United States Court of Appeals,
First Circuit.

Heard Oct. 2, 1995.
Decided Feb. 9, 1996.

---

John F. Suhre, Attorney, with whom C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, Washington, DC, were on brief for appellant.

Nancy S. Shilepsky, with whom David J. Burgess and Dwyer & Collora, Boston, MA, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

On December 29, 1993, Ollie Osinubi, a female paralegal at the Law Offices of Donald E. Green ("Green"), filed a Title VII charge against Green alleging sexual harassment and constructive discharge. Osinubi filed her charge with the Equal Employment Opportunity Commission ("EEOC") 191 days after the last alleged act of discrimination. After investigating Osinubi's charge, the EEOC brought this action against Green in the United States District Court for the District of Massachusetts alleging sexual and racial harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Green moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), arguing that Osinubi's claim was untimely, having been filed outside the 180–day limitations period outlined in section 706(e)(1) of Title VII, 42 U.S.C. § 2000e–5(e)(1). The district court agreed, and because Green's Motion to Dismiss presented matters outside the pleadings, the court treated it as a motion for summary judgment and granted summary judgment for Green. The EEOC appeals. For the reasons discussed below, we reverse.

## I.

### BACKGROUND

#### A. Title VII

Under section 706(e)(1), a charge of employment discrimination generally must be filed with the EEOC within 180 days of the last alleged act of discrimination. 42 U.S.C. § 2000e–5(e)(1).[1] However, if a claimant initially institutes proceedings with a state or local agency, a charge can be filed with the EEOC up to 300 days after the discriminatory act. *Id.*

Section 706(c) provides that where an alleged discriminatory employment practice has occurred in a so-called "deferral state" (a state that has its own anti-discrimination

---

1. In relevant part, section 706(e)(1) reads:
 A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged employment practice occurred....
 42 U.S.C. § 2000e–5(e)(1).

laws and enforcement agency), the deferral state has sixty days of exclusive jurisdiction over the claim, and only after the sixty days have expired or the proceedings have been "earlier terminated" can the charge be filed with the EEOC. 42 U.S.C. § 2000e–5(c).[2] The sixty-day period of exclusive jurisdiction is intended to "give States and localities an opportunity to combat discrimination free from premature federal intervention." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). Many state agencies, in order to facilitate the federal processing of charges, have entered into "worksharing agreements" with the EEOC in which the state agency agrees to waive its right to the sixty-day period of exclusive jurisdiction for certain categories of claims.

Massachusetts is a deferral state and the Massachusetts Commission Against Discrimination ("MCAD") is the agency responsible for enforcing Massachusetts's anti-discrimination laws. The EEOC and the MCAD have entered into a Worksharing Agreement to avoid duplication of effort by apportioning the responsibilities for processing charges.

*B. Facts*

In reviewing a motion for summary judgment, we recite the facts in the light most favorable to the non-moving party. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

Green hired Osinubi as a paralegal in October of 1992. Osinubi later left Green's employment allegedly because a work environment fraught with sexual harassment made work intolerable. On December 29, 1993, Osinubi filed a charge of sexual harassment and constructive discharge with the EEOC.

Osinubi did not file a separate charge with the MCAD.

At the top of her EEOC charge form, in the space provided for naming the state or local agency, if any, Osinubi typed "Mass Comm Against Discrimination." Osinubi failed, however, to mark a box in the lower left-hand corner that stated, "I want this charge filed with both the EEOC and the State or local Agency, if any." Osinubi also indicated on the charge form that the latest date that discrimination took place was June 20, 1993, 191 days prior to her filing the charge. After investigating the charge, the EEOC commenced this sexual harassment and race discrimination action in federal district court on December 7, 1994.

On February 8, 1995, Green moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), contending that the EEOC's claim was time-barred because of Osinubi's failure to file her charge within 180 days of the last alleged act of discrimination. Green further maintained that the EEOC could not avail itself of the extended 300–day limitations period because the extension only applies to claimants who have first filed with the state agency and Osinubi's charge was never filed with the MCAD. To support this factual proposition, Green attached to its motion the affidavit of Jane Brayton, executive assistant to the MCAD Commissioners, stating that her review of the MCAD computer files revealed no record of Osinubi's charge having been filed with the MCAD.

On March 6, 1995, the EEOC filed its Opposition to the Motion to Dismiss and attached the affidavit of Elizabeth Grossman, an EEOC trial attorney.[3] In her affidavit, Grossman stated, *inter alia*, that the EEOC had forwarded a copy of Osinubi's charge to

**2.** In relevant part, section 706(c) reads:
In the case of an alleged unlawful employment practice occurring in a State, ... which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed under [this section] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under State or local law, unless such proceedings have been earlier terminated....

42 U.S.C. § 2000e–5(c).

**3.** Grossman attached to her affidavit the following six exhibits: a copy of Osinubi's charge, her notes of a phone conversation with Green's attorney, the EEOC's charge transmittal form addressed to the MCAD for Osinubi's charge, the EEOC–MCAD Worksharing Agreement, letters from Green's attorney to the EEOC investigator, and the EEOC's letter of determination.

the MCAD on December 29, 1993. Grossman supported this statement with a copy of the EEOC's charge transmittal form for Osinubi's charge, dated 12/29/93 and addressed to the MCAD. The form, however, was not signed by an officer of the MCAD indicating the MCAD's receipt.

On March 13, 1995, Green moved to strike the charge transmittal form and that portion of Grossman's Affidavit regarding the EEOC's forwarding of Osinubi's charge. Green contended that the charge transmittal form was unauthenticated, did not prove filing with and receipt by the MCAD, and that Grossman has no personal knowledge of the EEOC's forwarding of Osinubi's charge to the MCAD.

On March 23, 1995, the EEOC filed its Opposition to the Motion to Strike. The EEOC responded that Grossman could attest to routine EEOC procedures and thereby authenticate the charge transmittal form and that Osinubi's charge was constructively filed with the MCAD when the EEOC forwarded it to the MCAD on December 29, 1993. In the alternative, the EEOC argued that even if the MCAD's receipt of Osinubi's charge was required to initiate MCAD proceedings, it could verify such receipt with the attached affidavit of Walter W. Horan, the EEOC Program Coordinator for the MCAD. In his attached affidavit, Horan stated that he was the MCAD's custodian of records of EEOC charges forwarded to the MCAD and that MCAD records indicated that the MCAD received a copy of Osinubi's charge on January 6, 1994. Horan attached to his affidavit a signed copy of the charge transmittal form acknowledging the MCAD's receipt of Osinubi's charge.

## C. District Court Opinion

On March 29, 1995, the district court issued its opinion resolving the Motion to Dismiss and the Motion to Strike. The court began its opinion by noting that because matters outside the pleadings were presented, it was converting Green's motion to dismiss for failure to state a claim to a motion for summary judgment. The district court had not previously notified the parties of its intention to convert. The court then ex-

plained that to qualify for the extended limitations period, Osinubi or the EEOC on Osinubi's behalf must have initially filed charges with the MCAD. The court found, however, that neither Osinubi nor the EEOC had done so. With respect to Osinubi, the court viewed her failure to check the box on the EEOC charge form as evincing a preference not to have her charge filed with the MCAD.

The EEOC, the court found, had also failed to file Osinubi's charge with the MCAD. The court assumed *arguendo* that Grossman's contested attestation that the EEOC had forwarded Osinubi's charge to the MCAD was admissible. The court held, however, that merely forwarding the charge to the MCAD was not sufficient to initiate MCAD proceedings and thereby trigger the extended limitations period; proof that the MCAD actually received the forwarded charge also was necessary.

Despite Horan's verification of the MCAD's receipt of Osinubi's charge, the district court found that the EEOC had not contested Brayton's assertion that the MCAD had no record of receiving Osinubi's charge. Accepting this "uncontested" fact as true, the court reasoned as follows: because the MCAD never received a copy of Osinubi's charge, a precondition to invoking the 300–day extended limitations period had not been satisfied; thus, the general 180–day limitations period applied, and the EEOC's complaint was time-barred. The district court made no mention of the Horan Affidavit and did not explain the reason for its failure to consider it.

Finally, the district court dismissed the EEOC's argument that paragraph II.A. of the EEOC–MCAD Worksharing Agreement ("[the MCAD] designates [the EEOC] as its agent for the purpose of receiving charges") allows MCAD proceedings to be initiated upon the *EEOC's* receipt of a charge and without additional notice to the MCAD. Citing *Hamel v. Prudential Ins. Co.*, 640 F.Supp. 103, 107 (D.Mass.1986), the court held that filing with the state agency is a precondition to invoking the extended limitations period and that to allow otherwise, e.g., by way of worksharing agreement, would be

inconsistent with the scheme Congress established.

## II.

### DISCUSSION

On appeal, the EEOC argues that the district court erred in granting summary judgment because: (1) in paragraph II.A. of the EEOC–MCAD Worksharing Agreement, the MCAD designated the EEOC as its agent for receiving charges and therefore MCAD proceedings were initiated when the EEOC received Osinubi's charge, thereby qualifying Osinubi for the extended limitations period and (2) even if actual receipt by the MCAD was required to commence MCAD proceedings, the Horan Affidavit provided ample evidence that the MCAD received Osinubi's charge to contradict the Brayton Affidavit and create a genuine issue of material fact.

Because we find the EEOC's second argument dispositive, we do not consider its first claim except to offer the following observation from our examination of the EEOC–

MCAD Worksharing Agreement. While Title VII[4] and the case law of other circuits[5] support the conclusion that worksharing agreements can permit state proceedings to be automatically initiated when the EEOC receives the charge, it is unclear from the language of the EEOC–MCAD Worksharing Agreement whether the EEOC and the MCAD intended MCAD proceedings to be initiated upon the EEOC's receipt.[6]

 After reciting the standard of review, we turn our attention to the EEOC's second argument. We review a grant of summary judgment *de novo* and are guided by the same criteria as the district court; a grant of summary judgment cannot stand on appeal "unless the record discloses no trialworthy issue of material fact and the moving party is entitled to judgment as a matter of law." *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 346 (1st Cir.1995).

 Whether Osinubi's charge enjoys the extended limitations period and is thereby timely filed depends on whether the MCAD

4. Title VII encourages cooperation between the EEOC and state and local agencies and authorizes the formalization of such cooperative efforts in written agreements. Section 705(g)(1) empowers the EEOC "to cooperate with and, with their consent, utilize regional, State, local, and other agencies." 42 U.S.C. § 2000e–4(g)(1). Section 709(b) provides that "[i]n furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies." 42 U.S.C. § 2000e–8(b). The Supreme Court has interpreted these sections to "envision the establishment of some sort of worksharing agreements between the EEOC and state and local agencies" and to permit provisions within these worksharing agreements "designed to avoid unnecessary duplication of effort or waste of time." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 122, 108 S.Ct. 1666, 1675, 100 L.Ed.2d 96 (1988).

5. *See Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir.1994) (holding that, under the terms of a worksharing agreement between the EEOC and the Texas Commission on Human Rights ("TCHR"), the EEOC's acceptance of a charge as the TCHR's agent instituted state proceedings within the meaning of section 706(e)(1)); *Hong v. Children's Memorial Hosp.*, 936 F.2d 967, 970–71 (7th Cir.1991) (holding that "workshare agreement can alone effect both initiation and termination of state proceedings and that, as a result, plaintiffs may file with the EEOC without first filing with the [state agency]"); *Sofferin v. Ameri-*

*can Airlines, Inc.*, 923 F.2d 552, 559 (7th Cir. 1991) (holding that "a worksharing agreement could provide that a filing with the EEOC simultaneously initiates and terminates state proceedings"); *Petrelle v. Weirton Steel Corp.*, 953 F.2d 148, 152 (4th Cir.1991) (conceding without deciding that plaintiff "may be correct in arguing that a work sharing agreement can be crafted to authorize automatic implementation of the requirements of [the ADEA equivalent to section 706(e)(1)]").

6. The EEOC and the MCAD would be wise to revise the language of their Worksharing Agreement to clarify their intent. Rather than explicitly providing that the EEOC's receipt of charges on the MCAD's behalf initiates MCAD proceedings for purposes of section 706(e)(1), paragraph II.A. states that the EEOC will be the MCAD's "agent for purposes of receipt." That phrase, however, supports two readings: that the EEOC will act as the MCAD's mailbox, date stamping and accepting mail on the MCAD's behalf or that the EEOC's receipt of a charge also initiates MCAD proceedings. The EEOC and the MCAD should also address the apparent ambiguity arising from the Worksharing Agreement's failure to define terms such as "appropriate charges" in paragraph II.D. and to distinguish the "advance waivers" of paragraph III.E.11. from the other waivers of paragraph III.E.1–10.

received a copy of Osinubi's charge.[7] The parties have put this material fact in dispute by submitting two competing affidavits: Brayton's assertion that the MCAD has no record of receiving Osinubi's charge and Horan's attestation to the MCAD's receipt of Osinubi's charge and charge transmittal form denoting the same. Accordingly, because the record before the district court posed a genuine issue of material fact, summary judgment could have been granted for Green only if the district court acted within the sphere of its discretion in failing to consider the Horan Affidavit.

■ Ordinarily, the district court has broad authority to prescribe the evidentiary materials it will consider in deciding a motion for summary judgment. *See United States v. Parcels of Land,* 903 F.2d 36, 45–46 (1st Cir.1990). We are reluctant to second-guess the district court in this area and review such decisions only for a clear abuse of discretion. *See id.* at 45. Nonetheless, we conclude that on the very unusual circumstances of this case, the district court overstepped its authority and abused its discretion in failing to consider the Horan Affidavit.

The unusual circumstances that motivate this decision include: (1) the district court's failure to notify the parties of its intention to convert Green's Motion to Dismiss into a motion for summary judgment, (2) the EEOC's attachment of the Horan Affidavit to a filing that was directly related to the Motion to Dismiss, and (3) the prejudice to the EEOC from the court's failure to give notice of its intention to convert. We discuss each in turn.

■ Fed.R.Civ.P. 12(b) has been interpreted to require the district court to expressly notify the parties of its intention to convert. *See Chaparro–Febus v. International Longshoremen Ass'n, Local 1575,* 983 F.2d 325, 332 (1st Cir.1992). In an effort to be pragmatic, this court has excused such a failure when it is harmless. *Id.* (holding the failure harmless "when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy"). We decline to excuse the district court in the instant case, however, as we find that its failure to notify the EEOC and Green of its decision to convert the Motion to Dismiss to one for summary judgment prejudiced the EEOC because the district court failed to consider the Horan Affidavit.

■ Although the district court never explained its failure to consider the Horan Affidavit in its summary judgment order or referred to the Horan Affidavit in any way, we presume that once it denied the Motion to Strike, the court saw no need to consider the EEOC's Opposition to the Motion to Strike and accordingly overlooked the Horan Affidavit referred to therein and attached thereto. The Opposition to the Motion to Strike, however, was directly related to the Motion to Dismiss; the district court had to resolve the Motion to Strike in order to determine which affidavits were properly before it on summary judgment. As such, the Opposition to the Motion to Strike was a filing to which a party reasonably might attach evidentiary materials opposing the Motion to Dismiss.[8] Having failed to notify the parties of its intention to convert, the district court at a minimum should have considered a filing like the Horan Affidavit that had reasonably been attached to an opposition that was directly related to the Motion to Dismiss.[9]

---

7. Because the EEOC does not contest the district court's ruling that forwarding a charge to the MCAD is not sufficient to initiate MCAD proceedings, we need not decide whether anything less than the MCAD's receipt, such as the EEOC's mere forwarding, initiates MCAD proceedings.

8. In its Opposition to the Motion to Strike, the EEOC argued that should the court grant the Motion to Strike the Grossman Affidavit, it should consider the attached Horan Affidavit in its place. While it would have been preferable for the EEOC to have attached the Horan Affida-

vit to a separate motion requesting the court to consider the affidavit as newly submitted evidence, the Horan Affidavit is sufficiently related to the Motion to Strike, that its attachment to the Opposition to the Motion to Strike is reasonable.

9. In so holding, we do not require the district court to scour ancillary filings for hidden and potentially relevant affidavits. A court need only refer to those filings in which a party reasonably might include materials in support of or in opposition to the motion to dismiss.

Had the district court followed the prescribed approach of Rule 12(b) and notified the parties of its intent to convert, the EEOC would almost certainly have had the opportunity to ensure that the district court consider the Horan Affidavit. When a court informs the parties of its intention to convert, ordinarily it provides the parties with a minimum of ten days, pursuant to Fed.R.Civ.P. 56(c), in which to augment previous filings. Had the district court so notified the parties in the instant case, the EEOC could have resubmitted the Horan Affidavit, attached to an opposition to the converted motion for summary judgment, and thereby guaranteed its consideration.[10] Similarly, had the district court specified which submissions it would consider in making its summary judgment decision, the EEOC could have filed the Horan Affidavit in compliance therewith.

As it turned out, however, the district court's failure to notify the parties of its intention to convert left the parties in the dark. Under this unique set of circumstances, where the district court's failure to notify the parties of its intention to convert was prejudicial and the Horan Affidavit was attached to a filing directly related to the Motion to Dismiss, the district court's failure to consider the Horan Affidavit was an abuse of discretion.

### III.

### CONCLUSION

Because we find that the Horan and Brayton Affidavits presented the district court with a genuine issue of material fact, we *vacate* the district court's order granting summary judgment for Green and *remand* for further proceedings consistent with this opinion.

---

**10.** Local Rule 56.1 of the District of Massachusetts requires a district court to consider evidentiary materials filed as exhibits to the opposition to the motion for summary judgment.